IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Akera Allen as parent and natural guardian of AP, MMC, and MDC (minors); Melissa Derosier and Timothy Derosier as guardians of ND and EA (minors); Cassandra Alvarez as parent and natural guardian of FaA, FrA, and AA (minors),<br><br>  Plaintiffs,<br>v.<br><br>Patricia Douglas, in her individual capacity as an agent / employee of Lexington County School District Two; Brenda Hafner, in her individual capacity as Superintendent of Lexington County School District Two; Lexington County School District Two; The South Carolina Department of Education;<br><br>  Defendants. | C/A No 3:24-cv-5626-SAL<br><br>**COMPLAINT**<br>[*Jury Trial Demanded*] |

Plaintiffs Akera Allen as parent and natural guardian of AP, MMC, and MDC (minors), Melissa Derosier and Timothy Derosier as guardians of ND and EA (minors), and Cassandra Alvarez as parent and natural guardian of FaA, FrA, and AA (minors) refereed to collectively as ("Plaintiffs")[1], by and through undersigned counsel allege as follows.

**SUMMARY OF ACTION**

1. This case involves a Lexington School District Two employee repeatedly and intentionally disciplining special needs children by means akin to torture through the repeated and

---

[1] Unless otherwise specified, wherein the term "Children or children" is used, it should be construed as "Plaintiffs."

1

intentional practice of turning off air conditioning in their school bus in 90+ degree weather for extended periods of time, resulting in both physical and mental trauma to these vulnerable children.

2.      As Lexington Sherriff Jay Koon has stated, "in just 10 minutes a care can heat up by 20 degrees, enough to kill a child."[2] Yet, as will be articulated below, the Defendants in this matter through systemic failure have subjected vulnerable children in their care to this threat.

3.      These actions deprived these children of the constitutional right to be free from state intrusions into realms of personal privacy and bodily security, through means so brutal, demeaning, and harmful as literally to shock the conscience of our courts.[3]

4.      The existence of this right to ultimate bodily security–the most fundamental aspect of personal privacy–is unmistakably established by the constitutional decisions of Federal Courts.

5.      Our courts have also recognized that this right must be especially guarded with respect to children in the care and custody of public schools.[4]

6.      Courts have recognized a similar enhanced protection of those rights for those made vulnerable by way of disability.

7.      At all relevant times, AP, MMC, MDC, ND, EA, FaA, FrA, and AA were children ranging in ages from 4-12. All but one suffer from disabilities and were classified by Defendants as special needs.

8.      The Parents[5] trusted Defendants to care for their young children and transport them safely to and from school.

---

[2] https://www.lexingtonscsheriff.com/sheriffs-blog/hot-cars-pose-danger-to-the-vulnerable/
[3] *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980).
[4] The Fourth Circuit has held that, "educators have been aware that the arbitrary use of corporal punishment . . . [has been] prohibited by the Fourteenth Amendment since at least . . . 1980." *Meeker v. Edmundson,* 415 F.3d 317, 323 (4th Cir. 2005).
[5] Where this complaint refers to "Parents" it should be construed to mean the Parents of Plaintiffs.

9. On May 7, 2024, Defendant Douglas was the school bus driver transporting AP, MMC, MDC, ND, EA, FaA, FrA, and AA from school.

10. Despite the age and disabilities of these children, Defendant Douglas, in 90+ degree temperatures, "punished" these vulnerable children by turning off the air conditioning on the bus for over 20 minutes.

11. On information and belief, Defendant Douglas left her own air conditioning in the front of the bus on.

12. The resulting heat in the bus caused seizures, overheating, heat exhaustion, nausea, mental trauma, and other health issues for these minor Children.

13. While doing this, Defendant Douglas verbally harassed the children stating:

    a. "I will cut the A/C off and burn you up."

    b. "There you go, enjoy."

    c. "Don't ask me to cut it back on."[6]

14. The children on the bus, unable to fully articulate what was happening to them, are heard yelling:

    a. "Don't burn us."

    b. "It's cold in here."

    c. "When it gets cold, I get tired."

    d. "Yeah, I get tired too."

15. Prior to this incident, Defendant Douglas had repeatedly used this cruel form of punishment while driving these children.

---

[6] A transcript of a portion of the video is attached as Exhibit A.

16. Parents were never informed that their vulnerable children were being subjected to this disturbing and illegal form of punishment.

17. The horrific actions at issue in this case show a systematic failure of Defendants to adequately train, retain, and / or have policies and procedures in place to prevent school bus drivers like Patricia Douglas from intentionally implementing punishments that amount to torture and infringe upon the constitutional rights of the most vulnerable children in the Defendants' care.

18. This action is being brought pursuant to 42 U.S.C. § 1983 for Defendants' deprivation of the constitutional rights of these children and their parents and corresponding state law claims.

## PARTIES AND JURISDICTION

19. Plaintiff Akera Allen is the parent and natural guardian of AP, MMC, and MDC (minors).

20. Plaintiff Akera Allen, AP, MMC, and MDC are residents of Lexington County.

21. Plaintiffs Melissa Derosier and Timothy Derosier are the guardians of ND and EA (minors).

22. Plaintiffs Melissa Derosier, Timothy Derosier, ND, and EA are residents of Lexington County.

23. Plaintiff Cassandra Alvarez is the parent and natural guardian FaA, FrA, and AA (minors).

24. Plaintiff Cassandra Alvarez, FaA, FrA, and AA are residents of Lexington County.

25. Upon information and belief, Defendant Patricia Douglas is a citizen and resident of Lexington County and was, at all times relevant to this complaint, acting under color of state law in the course and scope of her employment as an agent / employee of Lexington County School

District Two.  Defendant Douglas is sued in her individual capacity under federal law for compensatory and punitive damages and such other relief available pursuant to federal law.  This Defendant is a "person" as that term is used in the text of 42 U.S.C. § 1983.

26.     Upon information and belief, Defendant Brenda Hafner is a citizen and resident of Lexington County, and she was, at all times relevant to this complaint, acting under color of state law in the course and scope of her employment as Superintendent of Lexington County School District Two and was / is one of the policy making authorities of Lexington County School District Two.  Defendant Brenda Hafner is sued in her individual capacity under federal law for compensatory and punitive damages and such other relief available pursuant to federal law. This Defendant is a "person" as that term is used in the text of 42 U.S.C. § 1983.

27.     Defendant Lexington School District Two (hereinafter "Lexington Two"), at all times relevant to this action, is a local government entity and was acting through its agents, servants, employees and /or officers to include and not be limited to Defendant Douglas.  As such, Defendant Lexington Two is statutorily liable under South Carolina law for the actions and omissions of their employees / agents acting in the course and scope of their official duties pursuant to the South Carolina Tort Claims Act.  Defendant Lexington School District Two is sued under South Carolina law for compensatory damages pursuant to the South Carolina Tort Claims Act. S.C. Code Ann. § 15-78-10 *et seq*. and § 15-5-90 *et seq*.

28.     Defendant Lexington Two is the policy making authority for its agents / employees, and as such, Defendant Lexington Two is also being sued under federal law for compensatory and punitive damages and such other relief available pursuant to federal law for Municipal Liability Custom / Practice and Policymaking Authority.  This Defendant is a "person" as that term is used in the text of 42 U.S.C. § 1983.

29. That Plaintiffs are informed and believe that the Defendant South Carolina Department of Education (hereinafter "SCDOE"), at all times relevant to this action, is a state agency as defined by S.C. Code Ann. § 15-78-10, *et seq*. and has agents, employees, offices and/or properties located in the County of Lexington, State of South Carolina. At all times relevant to this action, Defendant SCDOE was acting by and through its agents, servants, employees, and/or officers to include and not be limited to those persons and/or individuals named in this complaint. As such, Defendant SCDOE is statutorily liable for the actions and omissions of their employees / agents acting in the course and scope of their official duties pursuant to the South Carolina Tort Claims Act.

30. The Court has personal jurisdiction over Defendants because Defendant Lexington Two is organized under the laws of South Carolina; Defendant Patricia Douglas is domiciled in South Carolina; and the actions and omissions at issue occurred in South Carolina.

31. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because this action is brought under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. § 1367 (supplemental jurisdiction).

32. Venue is proper in this Court as a substantial part of the events or omissions giving rise to this claim occurred within this Federal District.

**FACTS**

33. On May 7, 2024, AP, MMC, MDC, ND, EA, FaA, FrA, and AA were minor children being transported from Wood Elementary School by Lexington Two on a special needs bus operated by Defendant Patricia Douglas.

34. AP is classified as a special needs child, as he suffers from ADHD, PTSD, Epilepsy and intellectual disability.

35. MMC is classified as a special needs child, as she suffers from developmental disabilities.

36. MDC is not special needs but was on the bus to help her special needs brother and sister.

37. ND is classified as a special needs child, as she suffers from a rare genetic disorder.

38. EA is classified as a special needs child, as she suffers from autism and a significant anxiety disorder.

39. FaA is classified as a special needs child as he suffers from developmental delay, ADHD, suspected autism and suicidal tendencies.

40. FrA is classified as a special needs child as he suffers from a seizure disorder, an immune-depressive disorder, and developmental delay.

41. AA is classified as a special needs child as she suffers from a speech / language impairment.

42. Plaintiffs Melissa Derosier and Timothy Derosier entrusted their children ND and EA to Defendant Patricia Douglas and Defendant Lexington Two on a special needs school bus.

43. Plaintiff Cassandra Alvarez entrusted her children FaA, FrA, and AA to Defendant Patricia Douglas and Defendant Lexington Two on a special needs school bus.

44. Plaintiff Akera Allen entrusted her children AP, MMC, and MDC to Defendant Patricia Douglas and Defendant Lexington Two on a special needs school bus.

45. On May 7, 2024, Defendant Douglas was the bus driver transporting Plaintiffs. During this time, she was acting as an agent / employee of Defendant Lexington Two.

46. At or around 2:24 pm the afternoon of May 7, 2024, Defendant Douglas and Lexington Two affirmatively took custody and control over these children by picking them up and placing them in their bus seats.

47. The following is an approximate timeline of events on May 7, 2024:

   a. 2:24:11 PM – Defendant Douglas left Wood Elementary School with the children on the bus.

   b. 2:28:34 PM – Defendant Douglas stated, "[s]tay silent or I will cut the A/C off and burn you up."

   c. 2:28:52 PM – Defendant Douglas turned on the noise cancelling switch and turned off the air conditioning for the children.

   d. 2:28:53 PM – Defendant Douglas stated, "[h]ere you go, enjoy." She turned off the air conditioning and stated, "[d]on't ask me to cut it back on."

   e. 2:29:45 PM – Defendant Douglas appeared to turn the noise cancelling switch off, and upon information and belief, kept the air conditioning off.

   f. 2:31:16 PM – Defendant Douglas appeared to turn the noise canceling switch back on, and upon information and belief, kept the air conditioning off.

   g. 2:47:24 PM – Defendant Douglas appeared to turn the air conditioning switch on and stated, "[i]'m not going to make y'all suffer because you were not the ones . . . but [] kept going on and on."

   h. 2:50:23 PM – Defendant Douglas addressed a parent at a stop and informed them that "[b]ecause of him and another student, they lost air conditioning privileges."

48. Defendants were or should have been on notice that:

      a. A child's body temperature rises three to five times faster than an adult's body temperature.

      b. A vehicle can increase by 20 degrees in just 10 minutes.

49. The entire incident is recorded on video.

50. While the air conditioning is off, Children can be seen fanning themselves and can be heard yelling as a result of the heat.

51. As a result of this incident, Children have suffered seizures, nausea, heat exhaustion, mental anguish, and other mental and physical ailments.

52. As a direct result of this incident, Children have required significant psychiatric help.

53. For her actions on May 7, 2024, Defendant Douglas was criminally charged with cruelty to children.

54. On information and belief, Defendant Douglas has repeatedly turned off the air conditioning on public school buses she has driven as a form of punishment to the children.

55. Defendants, throughout their process in investigating what happened to these children and before this event, failed to provide accurate information to parents, and on information and belief, through intentional or negligent acts and/or omissions, have hidden information regarding these and other improper actions of bus drivers from parents.

56. Pursuant to S.C. Code Ann. § 59-67-520, Defendant SCDOE, shall have the responsibility for transporting handicapped persons of lawful school age to and from the nearest school in which a handicapped pupil has been duly assigned.

57. At the time Defendant was driving the bus with Plaintiffs, she was acting as an agent of both Defendants Lexington Two and SCDOE.

58. In addition to this incident, Defendant Douglas had on at least three prior occasions used this form of punishment.

59. Both Defendants SCDOE and Lexington Two had a statutory duty to "provide school transportation as closely and safely as practicable." S.C. Code Ann. § 59-67-420.

60. Lexington Two purports that "the safety and welfare of students is the first consideration in all matter pertaining to transportation."

61. Defendant Lexington Two had a duty pursuant to S.C. Code Ann. § 59-67-470 and the common law to ensure all school bus drivers were competent and understood appropriate methods for controlling behavior on their busses.

62. Defendant SCDOE had a duty pursuant to S.C. Code Ann. § 59-67-470 and common law to ensure all school bus drivers were adequately trained, including providing a "rigid school bus driving training course."

63. Defendants SCDOE and Lexington Two are responsible for ensuring that training includes proper methods for controlling behavior of students on busses.

64. As Defendant Douglas was a driver of a bus for special needs children, Defendants SCDOE and Lexington Two were responsible for training Defendant Douglas on the appropriate ways to control behavior for special needs children.

65. Lexington Two's policy manual states that each school bus driver will receive education materials including "specific information concerning employee conduct that is prohibited."

66. Pursuant to Defendant Lexington Two's policy manual, Defendant Brenda Hafner, as the superintendent, "is responsible for the overall bus transportation in the school district."

10

67. Pursuant to Regulation 43-80, Defendant Lexington Two is responsible to SCDOE for the supervision of the school transportation program in the district. This includes the recruitment of school bus drivers, employment and dismissal of school bus drivers, supervision of school bus drivers and the students being transported, proposed routing of buses, accurate transportation records as to mileage, number of students transported pursuant to section 59-67-100, driver's time reports, school bus safety, and enforcing all other transportation regulations.

68. Under Regulation 43-80, "[a] student who is disabled shall be accompanied by an aide if the student's Individual Education Program so specifies."

69. Pursuant to Regulation 43-80, "[e]ach district is responsible for all excessive driver and passenger abuse to the buses."

70. The U.S. Department of Education notes that it is "critically important" that the State Departments of Education, Local School Districts and personnel "consider the harmful effects that inappropriate and ineffective discipline can have on child development and outcomes; and invest in alternative strategies and supports to address learning and behavioral needs."

71. Defendants were or should have been aware of the harmful effects that inappropriate and ineffective discipline can have on all children, especially those with disabilities.

72. Defendants Brenda Hafner, Lexington Two, and SCDOE utterly failed to ensure Defendant Douglas was a competent school bus driver for special needs children.

73. Defendants Brenda Hafner, Lexington Two, and SCDOE failed to adequately train Defendant Douglas on proper methods for controlling behavior of special needs children.

74. Defendants Brenda Hafner, Lexington Two, and SCDOE were either aware or should have been aware that Defendant Douglas had been employing a means of punishment where she deprived special needs children of air conditioning as a way of punishment.

75. Pursuant to S.C. Code Ann. § 59-67-245, all Plaintiffs were required to obey Defendant Douglas while on the school bus or face potential criminal penalties.

76. Defendants Douglas and Brenda Hafner knew or reasonably should have known that their actions, occurring under color of state law, violated the constitutional rights of Plaintiffs.

77. Defendant Lexington Two violated Plaintiffs' constitutional rights through deliberately indifferent training of Defendant Douglas, deliberately indifferent supervision of Defendant Douglas, and a deliberately indifferent failure to adopt policies necessary to prevent constitutional violations which occurred in this case and which, on information and belief, had occurred previously.  From these failures, Plaintiffs suffered significant damages to include but not limited to physical injury, pain and suffering, mental and emotional anguish, and expenditures of monies for medical expenses, therapies, and other medical and health related services to include past and future medical costs.

78. As a direct and proximate result of the actions of Defendants Douglas and Hafner, Plaintiffs suffered significant damages, to include but not limited to physical injury, pain and suffering, mental and emotional anguish, and expenditures of monies for medical expenses, therapies, and other medical and health related services to include past and future medical costs.

79. As a direct and proximate result of the actions and omission of SCDOE, Lexington Two, their agents, ostensible agents, servants, and / or employees, Plaintiffs suffered significant damages to include but not limited to physical injury, pain and suffering, mental and emotional anguish, and expenditures of monies for medical expenses, therapies, and other medical and health related services to include past and future medical costs.

**FOR A FIRST CAUSE OF ACTION**
**Negligence / Gross Negligence as to Defendants Lexington School District Two and SCDOE**

80. Plaintiffs fully incorporate all prior paragraphs.

81. As minor children and special needs students in Defendants Lexington Two and SCDOE's custody, these Defendants owed to AP, MMC, MDC, ND, EA, FaA, FrA, and AA a responsibility and duty to train, supervise, and control their agents / employees.

82. At all relevant times, Defendant Douglas was acting as an agent, employee, servant, representative and / or ostensible agent of Defendant Lexington Two and SCDOE, making Defendants Lexington Two and SCDOE liable for the acts and / or omissions of Defendant Douglas under the doctrines of *respondent superior* or principal and agent and/or under the South Carolina Tort Claims Act.

83. That as a school district accepting custody of minor children suffering from disabilities, Defendant Lexington School District Two owed AP, MMC, MDC, ND, EA, FaA, FrA, and AA and their parents and guardians a responsibility and duty to supervise, train, and control their agents / employees.

84. That as a school district accepting custody of minor children suffering from disabilities, Defendant Lexington Two owed AP, MMC, MDC, ND, EA, FaA, FrA, and AA and their parents and guardians a duty to adequately train their school bus drivers on acceptable punishments for disabled children riding on their bus.

85. Under the applicable statutory framework and regulatory authority of South Carolina, SCDOE also owed AP, MMC, MDC, ND, EA, FaA, FrA, and AA and their parents and guardians a responsibility and duty to adequately train their school bus drivers on acceptable punishments for special needs children riding on their bus.

86. That as a school district accepting custody of minor children suffering from disabilities, Defendant Lexington Two owed AP, MMC, MDC, ND, EA, FaA, FrA, and AA and

their parents and guardians a responsibility and duty to supervise its employees so as to prevent repeated actions such as those at issue in this case.

87. Under the applicable statutory framework and regulatory authority of South Carolina, SCDOE also owed AP, MMC, MDC, ND, EA, FaA, FrA, and AA and their parents and guardians a responsibility and duty to supervise its employees so as to prevent repeated actions such as those at issue in this case.

88. Defendant Lexington Two exercised its responsibilities and duties to AP, MMC, MDC, ND, EA, FaA, FrA, and AA and their parents and guardians in a negligent and grossly negligent manner by:

    a. Failing to protect AP, MMC, MDC, ND, EA, FaA, FrA, and AA from harm;

    b. Failing to provide adequate safety measures;

    c. Failing to properly supervise/train agents/employees;

    d. Failing to timely and adequately inform AP, MMC, MDC, ND, EA, FaA, FrA, and AA's parents of the incident and potential injuries suffered by AP, MMC, MDC, ND, EA, FaA, FrA, and AA;

    e. Failing to properly and timely investigate the cause of apparent medical duress in AP, MMC, MDC, ND, EA, FaA, FrA, and AA;

    f. Failing to adequately train and/or supervise Particia Douglas; and

    g. Any other failures to meet reasonable and standard duties of care which may be uncovered through additional discovery or at trial.

89. Defendant SCDOE exercised its responsibilities and duties to AP, MMC, MDC, ND, EA, FaA, FrA, and AA and their parents and guardians in a negligent and grossly negligent manner by:

    a. Failing to protect AP, MMC, MDC, ND, EA, FaA, FrA, and AA from harm;

    b. Failing to provide adequate safety measures;

    c.    Failing to properly supervise/train agents/employees;

    d.    Failing to timely and adequately inform AP, MMC, MDC, ND, EA, FaA, FrA, and AA's parents of the incident and potential injuries suffered by their children;

    e.    Failing to properly and timely investigate the cause of apparent medical duress in AP, MMC, MDC, ND, EA, FaA, FrA, and AA;

    f.    Failing to adequately train and/or supervise Particia Douglas;

    g.    Any other failures to meet reasonable and standard duties of care which may be uncovered through additional discovery or at trial.

90.    That as a direct and proximate result of Defendant Lexington Two's and SCDOE's negligence, recklessness, gross negligence, and willful and wanton conduct articulated above, the Plaintiffs have suffered significant injuries and damages.

### FOR A SECOND CAUSE OF ACTION
### Violations of 42 U.S.C. § 1983 as to Defendant Douglas

91.    Plaintiffs fully incorporate all prior paragraphs.

92.    That in her role as an agent / employee of Defendant Lexington Two, and under color of state law, Defendant Douglas took physical custody of AP, MMC, MDC, ND, EA, FaA, FrA, and AA.

93.    Defendant Douglas owed AP, MMC, MDC, ND, EA, FaA, FrA, and AA and their parents a responsibility and duty to supervise, protect, and control AP, MMC, MDC, ND, EA, FaA, FrA, and AA and keep them safe from harm while in her custody, and Defendant Douglas failed in this regard, proximately causing harm to AP, MMC, MDC, ND, EA, FaA, FrA, and AA.

94.    That the harm that was inflicted upon AP, MMC, MDC, ND, EA, FaA, FrA, and AA was a direct and proximate result of the danger created by Defendant Douglas.

95.    That the harm was a foreseeable result of the Defendant Douglas's actions.

96. That Defendant Douglas's conduct was in willful and intentional disregard for AP, MMC, MDC, ND, EA, FaA, FrA, and AA's safety and / or was in deliberate indifference to AP, MMC, MDC, ND, EA, FaA, FrA, and AA's safety.

97. That AP, MMC, MDC, ND, EA, FaA, FrA, and AA were minor children with special needs, who were entrusted into Defendant Douglas's custody and care for safe transportation to school and were unable to protect themselves from the dangerous condition created by Defendant Douglas.

98. That Defendant Douglas used her authority to create an opportunity for the infliction of the harm upon AP, MMC, MDC, ND, EA, FaA, FrA, and AA by violating their constitutional rights, and without her authority, the opportunity to inflict the harm upon the children would not have existed.

99. That as a direct and proximate result of Defendant Douglas's conduct, AP, MMC, MDC, ND, EA, FaA, FrA, and AA were deprived of their rights under the United States Constitution and suffered injuries and damages as hereinafter set out.

### FOR A THIRD CAUSE OF ACTION
### Violations of 42 U.S.C. § 1983 as to Defendant Brenda Hafner

100. Plaintiffs fully incorporate all prior paragraphs.

101. That in her role as Superintendent of Defendant Lexington Two, and under color of state law, Defendant Hafner was an official with Defendant Lexington Two who had authority over Defendant Lexington Two's custom and/or formal policy of operating special needs buses.

102. That Defendant Hafner had notice that Defendant Lexington Two's custom and/or formal policy failed to adequately train school bus drivers of special needs children on appropriate punishment.

103. That Defendant Hafner knew or should have known of Defendant Douglas's prior use of punishments that violate the constitutional rights of special needs children.

104. That Defendant Hafner owed Plaintiffs a responsibility and duty to supervise, protect, and control Defendant Douglas and to keep Plaintiffs safe from harm while in the custody Defendant Lexington Two.

105. Defendant Hafner failed in this regard, proximately causing harm to Plaintiffs.

106. The harm that was inflicted upon Plaintiffs was a direct and proximate result of the custom and/or formal policy that created the dangers at issue via the operation of special needs buses, over which Defendant Hafner had authority.

107. The harm was a foreseeable result of the Defendant Hafner's actions.

108. Defendant Hafner's conduct was in willful and intentional disregard for Plaintiffs' safety and / or was in deliberate indifference to Plaintiffs' safety.

109. Plaintiffs were minor children with special needs and unable to protect themselves from the dangerous condition enhanced by Defendant Hafner.

110. Defendant Hafner used her authority to enhance the opportunity for the infliction of the harm upon Plaintiffs by violating their constitutional rights, and without her authority, the opportunity to inflict the harm upon Plaintiffs would not have been as great.

111. As a direct and proximate result of Defendant Hafner's conduct, Plaintiffs were deprived of their rights under the United States Constitution and suffered injuries and damages as hereinafter set out.

**FOR A FOURTH CAUSE OF ACTION**
**Violations of 42 U.S.C. § 1983 for a State Created Danger as to Defendant Lexington School District Two**

112. Plaintiffs fully incorporate all prior paragraphs.

113. Defendant Lexington Two, under color of law, had a custom and / or formal policy of operating special needs buses without ensuring drivers were trained and or / knew not to punish special needs children in the manner in which Defendant Douglas did.

114. Defendant Lexington Two, under color of law, had a custom and / or formal policy of retaining Defendant Douglas wherein Lexington Two was aware or should have been aware that she was violating students' constitutional rights by way of punishments which shock the conscious.

115. Defendant Lexington Two's custom and / or formal policy of operating special needs buses created danger, specifically to special needs students like Plaintiffs.

116. Defendant Lexington Two owed Plaintiffs a responsibility and duty to supervise, protect, and control Defendant Douglas and other students and to keep Plaintiffs safe from harm while in the custody of Defendant Lexington Two and that Defendant Lexington Two failed in this regard, proximately causing harm to Plaintiffs.

117. The harm that was inflicted upon Plaintiffs was a direct and proximate result of the danger created by Defendant Lexington Two's custom and / or formal policy of operating special needs buses.

118. The harm was a foreseeable result of the Defendant Lexington Two's actions.

119. Defendant Lexington Two's conduct was in willful and intentional disregard for Plaintiffs' safety and/or was in deliberate indifference to Plaintiffs' safety.

120. Plaintiffs were minor children with special needs, who were entrusted into the Defendant Lexington Two's custody and care for safe transportation to school, and they were unable to protect themselves from the dangerous condition created by Defendant Lexington Two.

121. Defendant Lexington Two used its authority to create an opportunity for the infliction of harm upon Plaintiffs by violating their constitutional rights, and without this authority, the opportunity to inflict the harm upon Plaintiffs would not have existed.

122. That as a direct and proximate result of Defendant Lexington Two's conduct, Plaintiffs were deprived of their rights under the United States Constitution and suffered injuries and damages as hereinafter set out.

## JURY DEMAND

123. Plaintiffs demand a trial by jury on all claims so triable.

## PRAY FOR RELIEF

124. A finding that as a direct and proximate result of the above set out acts and omissions of the Defendants, Plaintiffs were damaged in the following particulars:

    a. Actual and consequential damages resulting from personal injury, to-wit:

        (1) Disability, past and future;

        (2) Pain and suffering, past and future;

        (3) Stress, fear, anguish, and anxiety, past and future;

        (4) Medical costs, past and future;

        (5) Transportation costs, past and future;

        (6) Such other costs a jury and/or the Court may find appropriate, past and future.

120. In addition, Plaintiffs are informed and believe they are entitled to an award of punitive damages in an amount to be determined by a jury.

121. In addition, Plaintiffs are informed and believe that they are entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

19

122. In addition, Plaintiffs request any such other and further relief as the Court may deem just and proper.

WHEREFORE, the Plaintiff prays judgment for actual, consequential, and punitive damages against the Defendants in an amount to be determined by a jury, as well as attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**RICHARDSON THOMAS, LLC**

By: *s/William C. Lewis* _____
William C. Lewis (FBN: 12076)
will@richardsonthomas.com
Grace M. Babcock (FBN: 13880)
grace@richardsonthomas.com
1513 Hampton Street, First Floor
Columbia, SC 29201
T: (803) 281-8145
F: (803) 632-8263

**SHARPE AND LEVENTIS, LLC**
Joseph L. Leventis (FBN : 12604)
joe@sharpeleventis.com
5 Calendar Court Suite 102
PO Box 12627
Columbia, SC 29211
803-830-6296 (Phone)
803-724-2601 (Fax)

**ATTORNEYS FOR PLAINTIFF**

October 7, 2024
Columbia, SC