IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Akera Allen, *as parent and natural guardian of AP, MMC, and MDC (minors)*; Melissa Derosier and Timothy Derosier, *as guardians of ND and EA (minors)*; Cassandra Alvarez, *as parent and natural guardian of FaA, FrA, and AA (minors)*,<br><br>      Plaintiffs,<br><br>v.<br><br>Patricia Douglas, *in her individual capacity and as an agent / employee of Lexington County School District Two*; Brenda Hafner, *in her individual capacity as Superintendent of Lexington County School District Two*; Lexington County School District Two; The South Carolina Department of Education,<br><br>      Defendants. | Case No.: 3:24-cv-5626-SAL<br><br><br><br><br><br>**ORDER** |

  This matter is before the court for resolution of Defendants' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons below, the motions filed by Brenda Hafner and the South Carolina Department of Education are granted while the remaining Defendants' motions are denied.

### BACKGROUND

  As alleged in the amended complaint, ECF No. 30, this action arises out of Defendant Patricia Douglas' decision to withhold air conditioning from special needs children as a form of punishment on a school bus. *See id.* ¶ 8.

1

Plaintiffs—the respective guardians of eight special needs children between the ages of four and twelve—allege that on May 7, 2024, their children were riding home from Wood Elementary School in a school bus operated by Douglas. *See id.* ¶ 31. Douglas' bus was specifically designated for the transportation of students with special needs, *id.*, and the children represented in this action are alleged to suffer from, among other things, post-traumatic stress disorder, epilepsy, autism, speech impairments, and other intellectual and genetic disorders. *Id.* ¶ 32–39.[1]

Approximately four minutes after departing from the school, Douglas told the children on the bus to "[s]tay silent or I will cut the A/C off and burn you up." *Id.* ¶ 45. Shortly thereafter, Douglas then turned off the air conditioning,[2] telling the children, "[h]ere you go, enjoy," and warning them not to ask her to turn it back on. *Id.*

Approximately twenty minutes later, Douglas turned the air conditioning back on, stating "I'm not going to make y'all suffer because you were not the ones . . . ." *Id.* After turning the air conditioning back on, Douglas spoke to a parent at a bus stop to inform the parent that the students had "lost air conditioning privileges." *Id.* As a result of Douglas' actions, the children on her school bus experienced, among other injuries, seizures, heat exhaustion, and nausea. *Id.* ¶ 49.

Plaintiffs' amended complaint alleges that Douglas had on "at least three" occasions prior to May 7, 2024, deprived students of air conditioning on her school bus as a form of punishment. *Id.* ¶¶ 52, 56. As a result of her actions on May 7, 2024, Douglas was criminally charged with cruelty to children. *Id.* ¶ 51.

---

[1] One of the minors on the bus, MDC, is not a special needs child but was present on the bus to assist her siblings with special needs. ECF No. 30 ¶ 34.

[2] Douglas allegedly left her own separate air conditioning unit on. *Id.* ¶ 9.

The amended complaint further alleges claims for negligence and gross negligence against Lexington County School District Two ("Lexington Two") and the South Carolina Department of Education ("SCDOE"). Additionally, the complaint raises three separate claims arising under 42 U.S.C. § 1983 against (1) Patricia Douglas in her individual capacity and as an agent of Lexington Two; (2) Brenda Hafner in her individual capacity as Superintendent of Lexington Two; and (3) Lexington Two.

Now pending before the court are three motions to dismiss the amended complaint, ECF Nos. 31, 33, 37, which the court will address in turn.[3, 4]

## LEGAL STANDARD

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived from them in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ashcroft*, 556 U.S. at 662 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). But "[t]hreadbare recitals

---

[3] Hafner and Lexington Two seek their respective dismissals in one motion, ECF No. 31.

[4] The motions to dismiss which precede the amended complaint, ECF Nos. 23, 27, are moot.

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

## DISCUSSION

### I.     Defendant Douglas' Motion

Douglas argues the § 1983 claim against her should be dismissed under Fed. R. Civ. P. 12(b)(6) for two reasons, neither of which are persuasive. *See* ECF No. 33-1.

#### A.     South Carolina Tort Claims Act

First, Douglas submits that she is not the proper defendant in this case under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 *et seq*. ("SCTCA"). She asserts that, despite being named in her individual capacity, her employer, Lexington Two, must be named in her place because she was acting within the scope of her official duties. *See* ECF No. 33-1 at 5 (citing S.C. Code Ann. § 15-78-70).

Defendant Douglas' reading misses the mark. Under 42 U.S.C. § 1983, a plaintiff may sue any person acting under color of state law for the deprivation of federal civil rights. Had this suit been filed in state court under the SCTCA, the proper defendant analysis might differ; however, Douglas is named in this § 1983 action in her individual capacity, and she is alleged to have violated Plaintiffs constitutional rights while acting under color of state law. ECF No. 30 ¶ 23. Put simply, in § 1983 actions, when a defendant is sued individually, the plaintiff seeks "to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Douglas' argument that she was acting within the scope of her official duties does not entitle her to any state-created immunity; rather, it confirms that she was acting under color of state law for purposes of Plaintiffs' § 1983 claim against her

individually. The court accordingly rejects Douglas' contention that she is not a proper defendant in this action.

### B.     Substantive Due Process

Next, Douglas contends that her alleged conduct does not rise to the level of constitutional concern, focusing heavily on the absence of any allegation that she abused the children by way of physical contact. The court remains unpersuaded.

The United States Supreme Court has recognized that "corporal punishment in public schools implicates a constitutionally protected liberty interest . . . to be free from . . . unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). In determining whether particular conduct violates a student's substantive due process rights, the Fourth Circuit has instructed courts to evaluate several factors: (1) whether the force was "disproportionate to the need presented," (2) whether the force was "inspired by malice or sadism rather than a merely careless or unwise excess of zeal," and (3) whether the force inflicted "severe" injury. *Meeker v. Edmundson*, 415 F.3d 317, 321 (4th Cir. 2005) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)). If, on balance, these factors lead to the conclusion that the conduct constituted a "brutal and inhumane abuse of official power literally shocking to the conscience," then the plaintiff has made out a substantive due process claim. *Id.*

Taking the allegations of the amended complaint as true, each factor weighs in Plaintiff's favor, and, if proven, Douglas' conduct is shocking to the conscience. First, it appears the "need presented" was merely to quiet the children on the school bus. *See* ECF No. 30 at ¶ 45 ("Stay silent or I will cut the A/C off and burn you up."). Depriving the children of air conditioning in temperatures exceeding 90 degrees, *id.* ¶ 8, is neither proportionate nor appropriate to address this need. Further, Douglas' alleged conduct appears malicious rather than merely overzealous,

5

especially considering the children's age range and their special needs. While Douglas' *threat* might be characterized as an overzealous attempt to achieve compliance, the *act* of turning off the air conditioning served no legitimate purpose and instead caused distress. Indeed, the amended complaint alleges the children began yelling more *because* of the heat. *Id.* ¶ 48. To be sure, Douglas' statements acknowledge that her actions caused the children to suffer. *Id.* ¶ 45(g). Finally, the amended complaint alleges that the children experienced severe injuries, including heat exhaustion, nausea, and *seizures* because of Douglas' actions. *See id.* ¶¶ 10, 49. Taken together, the facts alleged represent inhumane, arbitrary punishment of a vulnerable class, and Douglas' conduct is shocking to the conscience.

Although Douglas argues that her actions do not amount to corporal punishment in the traditional sense (such as the physical beatings in *Meeker*), there is no principled basis from which to distinguish between assault-style punishment and the form of punishment—undoubtedly corporal in nature—that she applied here. Douglas' remaining arguments, which seek to minimize her conduct and the impact it had on the children, are more appropriately addressed at the summary judgment stage. "Of course, upon full development of a summary judgment or trial record, it may appear that the actual facts of the incident do not support a claim of substantive due process violation." *Hall*, 621 F.2d at 614.

Based on the factors set forth in *Hall* and *Meeker*, the allegations in the amended complaint plausibly assert a substantive due process claim under 42 U.S.C. § 1983 against Defendant Douglas, and her motion is denied in its entirety.

## II. Defendant Hafner's Motion

Hafner, the Superintendent of Lexington Two, argues that the amended complaint fails to allege sufficient knowledge of, or involvement in, Douglas' conduct to sustain a § 1983 claim against her. Hafner relies on *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980) for this proposition.

In *Hall*, the parents of a student brought a § 1983 suit against (1) a teacher who paddled their child; (2) the principal of the school who authorized part of the paddling; (3) the current and former superintendents of the county school district; and (4) multiple county school board members. 621 F.2d at 609. The trial court dismissed the action in its entirety under Fed. R. Civ. P. 12(b)(6), and the Fourth Circuit reversed, holding that only the claims against the teacher and principal could survive. *Id.* at 615. The allegations against the remaining defendants were insufficient to make out a § 1983 claim:

> While these defendants were alleged in conclusory terms to have condoned a general policy of inflicting excessive corporal punishment on students in the school system, none was alleged specifically to have directed, supervised, participated in, authorized or even to have condoned by knowing acquiescence the specific incident upon which this claim for relief is based. Under the circumstances they would not be liable directly or vicariously, for any constitutional deprivation suffered in the incident.

*Id.* (citing *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977); *Rizzo v. Goode*, 423 U.S. 362 (1976)). Hafner similarly contends the amended complaint here fails to allege that she had actual knowledge of Douglas' conduct or that she directed, supervised, participated in, or authorized Douglas' actions.

In response, Plaintiffs cite the following allegations in support of their claim against Hafner:

- "Defendant Hafner was an official with Defendant Lexington Two who had authority over Defendant Lexington Two's custom and/or formal policy of operating special needs buses." ECF 30 at ¶ 106.

7

- Defendant Hafner was "responsible for the overall bus transportation in the school district." *Id.* ¶ 65.

- "Defendant Hafner had notice that Defendant Lexington Two's custom and/or formal policy failed to adequately train school bus drivers of special needs children on appropriate punishment." *Id.* at ¶ 107.

Plaintiffs argue that these allegations are supported by the fact that "Defendant Douglas addressed a parent at a stop and informed them that" the students had "'lost air conditioning privileges.'" *Id.* ¶ 45(h). In other words, Plaintiffs contend that Douglas' openness about her conduct implies that Hafner had notice that Douglas was engaging in such conduct and knowingly allowed it to continue. *See* ECF No. 41 at 16.

The court agrees with Hafner. In addition to the example in *Hall*, the Fourth Circuit has held that supervisory liability under § 1983 requires the following:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). The amended complaint fails to meet the first prong. Although Plaintiffs allege that Hafner "knew or should have known" about Douglas' actions, ECF No. 30 at ¶ 108, the pleading is devoid of factual allegations that would make such an allegation plausible.[5] In other words, it is speculative to claim that Hafner had actual knowledge of an individual bus driver's conduct within her district,

---

[5] To be sure, Plaintiffs' argument is that Douglas' comment to a parent about her revocation of air conditioning privileges somehow establishes Hafner's knowledge of, and acquiescence to, the same. *See* ECF No. 41 at 16. The court fails to understand how this fact establishes Hafner's knowledge, or distinguishes this case from *Hall*, where a teacher was similarly forthcoming—albeit with a principal instead of a parent—about his use of corporal punishment. *See* 621 F.2d at 614.

and Plaintiffs fail to demonstrate that Hafner should be charged with such knowledge. Accordingly, for the reasons articulated in *Hall* with respect to the superintendents, Hafner is entitled to dismissal of the § 1983 claim against her.

### III. Defendant Lexington Two's Motion

Lexington Two challenges the sufficiency of Plaintiffs' allegations seeking to impose municipal liability under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).[6]

Under *Monell*, a municipality may be held liable under § 1983 only when its "policy or custom" inflicts an otherwise cognizable injury. *See* 436 U.S. at 694. "[U]nder *Monell*, a municipality is liable only for its own illegal acts." *Owens v. Baltimore City State's Att'y's Office*, 767 F.3d 379, 402–04 (4th Cir. 2014) (citing *Monell*, 436 U.S. at 691). "Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability." *Id.* The Fourth Circuit recognizes four ways for a plaintiff to establish a "policy or custom" under *Monell*:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Starbuck v. Williamsburg James City Cnty. School Board*, 28 F.4th 529, 533 (4th Cir. 2022). Plaintiffs argue their allegations support liability under the third and fourth prongs. *See* ECF No. 41 at 19. The court agrees with their position under the third prong alone.[7]

---

[6] Lexington Two further moved to dismiss or strike Plaintiffs' prayer for punitive damages. In their response, Plaintiffs withdrew the same.

[7] Plaintiffs wholly fail to allege that the practice at issue was sufficiently persistent or widespread: the amended complaint alleges wrongdoing by a single bus driver on four occasions. The alleged conduct, on its face, is not so "persistent and widespread and permanent and well settled as to constitute a custom or usage with the force of law." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.

9

To establish *Monell* liability under a failure to train theory, a plaintiff must establish that the municipality's failure amounted to deliberate indifference. *Starbuck*, 28 F.4th at 533; *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference requires that the municipality knew or should have known of the deficiency, and proof of a single incident is "almost never enough" to trigger *Monell* liability under a failure to train theory. *Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020) (citing *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1999)). However, the Supreme Court has acknowledged an exception if, "in light of the duties assigned to specific officers or employees the need for more or different training [may be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the municipality "can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Here, Plaintiffs allege that Lexington Two failed to train Douglas on appropriate methods for managing special needs children's behavior. ECF No. 30 ¶ 73. Specifically, they claim the district failed to ensure that bus drivers "were trained and / or knew not to punish special needs children in the manner in which Defendant Douglas did." *Id.* ¶ 121. While the amended complaint contains no details regarding alleged incidents prior to May 7, 2024, it provides enough factual support to plausibly suggest that Douglas was inadequately trained. *See* ECF No. 30 at ¶ 45. And where the Supreme Court has acknowledged the *possibility* of liability without prior notice, the court concludes that Plaintiffs have sufficiently alleged a failure-to-train claim against Lexington Two to survive the motion to dismiss.

---

1999) (internal quotations omitted). Rather, the only plausible inference to be drawn is that Douglas' conduct represented "episodic exercises of discretion"—however misguided—"in the operational details of government." *See Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999).

While the failure to train claim against Lexington Two very well may not ultimately survive a motion for summary judgment, the allegations, if proven, might entitle Plaintiffs to relief against this Defendant, and Lexington Two's motion is accordingly denied.

### IV.   Defendant SCDOE's Motion

SCDOE contends it is immune from suit under the Eleventh Amendment, ECF No. 37-1, while Plaintiffs counter that SCDOE has waived its immunity for negligence claims under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 *et seq*. ("SCTCA").

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As interpreted, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). The immunity guaranteed by the Eleventh Amendment further extends "to state agencies and other government entities properly characterized as arms of the State." *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (cleaned up).

Plaintiffs do not dispute that SCDOE is generally immune from suit as an agency or arm of the state; instead, they argue that SCDOE waived its immunity for claims of negligence within the text of the SCTCA. *See* ECF No. 41 at 10.

In order to waive Eleventh Amendment immunity, a state must "*expressly* consent to suit *in federal court* . . . ." *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018), *aff'd*, 140 S. Ct. 994 (2020). Accordingly, "[a]lthough a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). In other words, "a State does not

11

consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 676 (1999).

While Plaintiffs argue that their claims for negligence and gross negligence are viably alleged against SCDOE under the SCTCA, such claims must be brought in state court. The SCTCA, while waiving immunity within courts of the state's own creation, expressly disclaims consent to suit *in federal court*. See S.C. Code Ann. § 15-78-20(e).

Because Plaintiffs do not contest that SCDOE is an arm of the state of South Carolina, and South Carolina has not expressly waived Eleventh Amendment immunity for SCDOE in federal court, SCDOE's motion is granted under the Eleventh Amendment, and SCDOE is dismissed as a defendant in this action.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Defendant Brenda Hafner, ECF No. 31, and the South Carolina Department of Education, ECF No. 37, are **GRANTED**. Defendant Lexington Two's motion, ECF No. 31, and Defendant Patricia Douglas' motion, ECF No. 33, are **DENIED**. Defendants' motions to dismiss that preceded the amended complaint, ECF Nos. 23, 27, are **DENIED** as moot.

**IT IS SO ORDERED.**

April 15, 2025  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge